IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN M. HULL, HQ-8618, )
    Petitioner, )
)
    v. ) Civil Action No. 08-1341
)
LOUIS FOLIO, et al., )
    Respondents. )

Memorandum Opinion and Order

Mitchell, M.J.

John M. Hull has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied. An appropriate Order will be entered.

John M. Hull, an inmate at State Correctional Institution- Greene has presented a petition for a writ of habeas corpus. In an order entered on September 29, 2008, the respondents and the District Attorney of Allegheny County were directed to respond and show cause, if any, why the relief sought should not be granted.

Hull is presently serving a life and consecutive fifteen to forty year sentence following his his conviction by a jury of homicide, robbery, burglary, violation of the Uniform Firearms Act and criminal conspiracy at Nos. CC199407634 and CC 199407505 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on May 15, 1995.[1]

---

[1] See: Petition at ¶¶ 1-6. The state court records reflect that the petitioner was sentenced on the homicide to a mandatory life sentence on May 15, 1995 immediately following the jury

1

An appeal was taken to the Superior Court in which the issues presented were:

I. When a key Commonwealth witness is not entitled to the post-conviction relief conceded by the District Attorney, the District Attorney deprives the defendant of due process by failing to disclose an agreement to favorably treat the PCRA petitions of that witness in exchange for his damaging testimony.

II. By improperly and unnecessarily notifying the jury that counsel for defendant and former counsel for a witness against the defendant are members of the same Public Defender's office, the District Attorney misled the jury into believing that defense counsel was pursuing an ingenuous line of inquiry and created a conflict of interest.

III. By specifically instructing the jurors in a charge isolated from the general witness credibility charge that they "must" consider the defendant's "Vital interest" in the outcome of his trial when assessing his credibility, the trial court unduly singled out the defendant, thereby discrediting his testimony before the jury retired to deliberate, depriving him of the presumption of innocence, and invading the province of jury: trial counsel rendered ineffective assistance by failing to object to this charge.

IV. A. Because the evidence connecting the accused to a prior unrelated crime was weak and was introduced through witnesses having an interest in both the underlying homicide and that prior unrelated crime, the trial court erred by failing to conclude that the prejudicial effect of that evidence outweighed its probative value.

   B. The trial court erred by allowing references to prior crimes or bad acts when those references were not offered to prove motive, identification, intent or the like but rather merely to show the defendant's propensity or character for such conduct.

V. When the principle witness connecting the accused to the claimed motive and the witness attributing a confession to the accused have an interest or bias inducing them to testify on the Commonwealth's behalf. Defense counsel renders ineffective assistance by failing to request the trial court to educate the jurors that the interest or bias of those witnesses should affect their credibility determinations.

VI. When evidence introduced at trial could have caused the jury to believe that an argument and struggle had provoked the homicide, the trial court erred by

---

verdict and the consecutive additional sentences were imposed on July 12, 1995.

failing to give a requested voluntary manslaughter instruction.[2]

On July 8, 1998, the Superior Court affirmed the judgment of sentence but remanded the "matter for an evidentiary hearing on the sole issue of whether the Commonwealth had agreed to grant favorable treatment to Demko in exchange for his testimony against appellant."[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed on petitioner's behalf in which the issues raised were:

> I. By remanding to the trial court for an evidentiary hearing despite its apparent acceptance of all facts necessary to the disposition of the issue presented, the Superior Court evades responsibility for awarding a new trial to a convicted murderer, creating needless delay and additional burdens on the court system.
>
> II. The Supreme Court has never considered and is hereby urged to follow the modern trend prohibiting a trial court from instructing jurors that they "must" consider the defendant's "vital interest" in the trial's outcome when assessing his credibility, as such judicial comment burdens the presumption of innocence by singling out the defendant's testimony as unworthy of belief, invades the province of the jury by mandating that they deliberate on the defendant's motive to lie, and renders the defendant incompetent to testify on his own behalf.[4]

Leave to appeal was denied on February 9, 1999.[5]

Pursuant to the remand of the Superior Court, on September 28-29, 1999, the trial court conducted an evidentiary hearing on the issue remanded. On July 13, 2001, the trial court entered an order affirming the judgment of sentence and concluded that all claims raised by the petitioner

---

[2] See: Exhibit16 to the answer of the Commonwealth.

[3] See: Exhibit19 to the answer of the Commonwealth.

[4] See: Exhibit 20 to the answer of the Commonwealth.

[5] See: Exhibit 21 to the answer of the Commonwealth.

3

were meritless.[6]

> An appeal was taken to the Superior Court in which the issues presented was:
>
> Whether the trial court erred in failing to grant Mr. Hull a new trial, where significant evidence existed demonstrating an agreement for leniency between the Commonwealth and Mr. Demko, the only witness who claimed to have heard Mr. Hull confess and whether at a minimum, the Commonwealth's role in obtaining sentencing reductions and considerations favoring Demko constituted sufficient evidence of an implication or understanding for leniency and alternatively whether Mr. Hull was denied his constitutional rights to due process, meaningful confrontation, fair trial and fundamental fairness where Mr. Demko testified at trial that he was only testifying as a "good citizen" with no expectation of favorable treatment and where the contradictory post-trial evidence of leniency was never presented to a jury.[7]

On January 6, 2004, the judgment of sentence was "reaffirmed".[8]

> A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issues presented were:
>
> Whether Mr. Hull was denied a fair trial, where the jury was never informed of evidence regarding an agreement or understanding for leniency between the Commonwealth and its key trial witness, which included a prison transfer and a net sentence reduction of between 4 to 8 months.
>
> And whether the Superior Court misapplied and construed too narrowly applicable law in concluding that no relief was warranted absent proof of a formal leniency agreement, where applicable law requires full disclosure of any potential understanding, as well as disclosure of any expectation or hope for leniency on the part of the prosecution witness.
>
> And alternatively, whether Mr. Hull was denied his constitutional rights to due process, meaningful confrontation, fair trial and fundamental fairness, where the prosecution's key witness testified at trial that he was only testifying as a "good citizen" with no expectation of favorable treatment, but where contradictory

---

[6] See: Exhibit 22 to the answer of the Commonwealth.

[7] See: Exhibit 27 to the answer of the Commonwealth.

[8] See: Exhibit 29 to the answer of the Commonwealth.

4

record evidence of the Commonwealth's significant post-trial favoritism, procedure manipulation, leniency and consent to sentence reduction was never presented to a jury.[9]

On May 18, 2004 leave to appeal was denied.[10]

On July 15, 2004, Hull filed a post-conviction petition in the Court of Common Pleas. On January 16, 2007, the post-conviction petition was dismissed as meritless.[11]

An appeal was taken to the Superior Court in which the issues presented were:

I. Appellant's constitutional rights to due process meaningful connotation and a fair trial were violated because the jury was unaware that a witness, John Demko, testifying against Appellant ultimately received very favorable treatment as a result of his testimony against Appellant.

II. All prior counsel was ineffective for failing to raise whether Appellant's constitutional rights to due process meaningful connotation and a fair trial were violated because the jury was unaware that a witness testifying against Appellant ultimately received very favorable treatment as a result of his testimony against Appellant.[12]

In a Memorandum filed on October 12, 2007, the denial of post-conviction relief was affirmed.[13]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which these same two issues were presented.[14] Leave to appeal was denied on March 26, 2008.[15]

The instant petition was executed on September 23, 2008, and in it, Hull contends he is

---

[9] See: Exhibit 30 to the answer of the Commonwealth.

[10] See: Exhibit 31 to the answer of the Commonwealth.

[11] See: Exhibit 38 to the answer of the Commonwealth.

[12] See: Exhibit 43 to the answer of the Commonwealth.

[13] See: Exhibit 45 to the answer of the Commonwealth.

[14] See: Exhibit 46 to the answer of the Commonwealth.

[15] See: Exhibit 48 to the answer of the Commonwealth.

entitled to relief on the grounds that he was denied due process as a result of the Court of Common Pleas denying him a hearing on his post-conviction petition.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions

is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the issue which the petitioner seeks to raise here is the failure of the Court of Common Pleas to conduct a hearing on his post-conviction petition. While it is readily apparent that this issue has never been presented to the appellate courts of the Commonwealth for their consideration in the first instance, in its answer the Commonwealth presumes that the petitioner is in reality seeking to raise the issue he has repeatedly raised and that is that the jury should have been informed of the fact that a leniency deal had been made between the prosecutor

7

and his main witness. As so construed, the Commonwealth concedes that this issue has been exhausted and is timely and properly before this Court.[16] Nevertheless, the Commonwealth argues that this issue is meritless.

Hull was arrested and charged with many crimes arising in conjunction with the death of John Krakovsky. While there was considerable testimony presented against the petitioner, his complaint here is focused on the testimony of John Demko. Reciting from the petitioner's brief, the Superior Court on direct appeal, the petitioner alleged:

> John Demko, was housed in [the same prison as the petitioner] provided damaging testimony. He claimed that John Hull confided in him that he had shot a man and that he was concerned because the police found the gun he had thrown from the truck.
>
> John Demko initiated contact with the police. He sought and received a transfer [to another penitentiary]. Defense counsel called Mr. Demko's cellmate and other co-inmates to support the theory that John Demko had fabricated the "confession" after gathering information from them. Further, defense counsel sought to explore any favorable treatment sought or received by Mr. Demko in his Post Conviction Relief Act petition. In response the district attorney advised the jury that John Demko had previously been represented by Kirk Henderson, a fellow member of the Public Defender's office. He argued that because Mr. Henderson agreed that John Demko's PCRA petitioner was meritorious, the district attorney must not have promised to favorably treat that petition.[17]

However, while denying relief on all the substantive issues, the Court concluded an evidentiary hearing was required to explore the issue of "whether the Commonwealth had agreed to grant favorable treatment to Demko in exchange for his testimony against appellant."[18]

Pursuant to that remand, an evidentiary hearing was conducted on September 28-29,

---

[16] See: Answer of the Commonwealth at pp.19, 21.

[17] See: Exhibit 19 to the answer of the Commonwealth at pp.5-6.

[18] Id. at p. 21.

1999, in the Court of Common Pleas. In an Opinion filed on September 17, 2002, the trial court stated:

> [D]efendant contends that all Commonwealth witnesses lied concerning the existence of an agreement to afford Commonwealth witness John Demko with favorable treatment in exchange for this testimony. This Court, however, specifically finds the testimony of Mr. Demko, Assistant District Attorney Russell Broman and Mr. Demko's defense counsel Mr. William Schmalzried, Esquire, denying that such an agreement existed, credible. As such defendant's claim is legally without merit.[19]

Thus, as a matter of credibility, the trial court concluded that the petitioner's claim was meritless.

While we recognize that the findings of the trial court are presumed correct and are clearly not contrary to federal law, we have also reviewed the transcript of the remand hearing held on September 28-29, 1999, in response to the petitioner's contention that in exchange for his incriminating testimony, Demko had received favorable treatment in his own criminal prosecution. Other than this bald allegation by the petitioner, there is absolutely nothing in the record to support his allegation.

At the remand hearing, Demko testified that he received a favorable adjustment in his sentence because of sentencing errors (TT. 7, 10, 11) and that other than being housed apart from the petitioner, he had not received any promise or reward in exchange for his testimony at the petitioner's trial (TT.7, 9, 10, 11).

Demko's trial attorney likewise testified that from the record it was clear that the intent of Demko's sentencing court was not being carried out; that as a result the plea bargain was not being fulfilled, and that a correction in Demko's sentence was warranted (TT. 13, 15, 16, 28, ,

---

[19] See: Exhibit 25 to the answer of the Commonwealth.

36,)[20]; that the only benefit which Demko received in exchange for his testimony was being housed separately from Hull (TT.33, 34-35,37) and that other than physical separation, there was no arrangement for Demko to receive any favorable treatment in exchange for his testimony against Hull (TT.22,25,33,36,37,38-48).

Finally, the assistant district attorney testified that he agreed that Demko had not been sentenced in accordance with his plea agreement and that correction was mandated (TT. 56,57,71,78, 79,85, 89,93-94) and that other than being relocated, Demko received no favorable treatment as a result of testifying against Hull (TT, 63-65, 85, 93-94).

Thus, the record is totally devoid of any evidentiary support for the petitioner's argument here, and indeed, the record clearly demonstrates that no such support exists other than the petitioner's bald allegations. For this reason, it appears that the decisions of the courts of the Commonwealth are not contrary to federal law as interpreted by the United States Supreme Court nor do they constitute an unreasonable application of that law. For this reason, the petition is subject to dismissal.

An appropriate Order will be entered.

---

[20] Record references marked "TT" refer to the transcript of the remand hearing held on September 29-29, 1999.

ORDER

AND NOW, this 19th November, 2009, for the reasons set forth in the foregoing Memorandum, IT IS ORDERED that the petition of John M. Hull for a writ of habeas corpus is DISMISSED, and that because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

                                                s/ Robert C. Mitchell
                                                United States Magistrate Judge